No. 23,791.

MAGGIE KUHN, and ELMER KUHN, by MAGGIE KUHN, His Guardian and Next Friend, *Appellees,* v. BARBARA KUHN et al., *Appellants.*

SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Specific Performance of Oral Contract—Demurrer to Evidence Properly Overruled.* The overruling of a demurrer to the petition, in an action to determine the title to land and for the enforcement of an oral contract transferring the ownership thereof, under which there was partial performance in reliance on the contract, is held to be without error.

2. SAME—*Evidence—Record of Probate Court.* The admission in evidence of a record of the probate court, showing the selection of a share of the land involved herein by one of the parties in pursuance to the terms of a will, is not prejudicial error.

3. SAME—*Finding of Court Sustained by Evidence.* The evidence examined, and held to be sufficient to sustain the findings of the court that a binding contract was made between the parties making a complete division and disposition of the land in question, and under which the plaintiffs became entitled to the part awarded to them.

4. SAME. The rule, that the evidence in such a case must clearly and satisfactorily show the making of the oral contract, the performance of the same and reliance on it, is to be tested and applied by the trial court, and there being substantial supporting evidence of the findings made, it must be presumed that that court applied the proper test.

5. SAME—*Equitable Action—Jury Called—Power of Court Over Jury's Fndings —Instructions.* Where a jury is called in an advisory capacity in an equitable action and returns some findings of fact, and the court then gives independent consideration to the evidence and makes findings of its own covering the case, which includes and approves some made by the jury, the instructions given to the jury are ordinarily of little importance in a review of the case. *Held,* the instructions of the court herein afford no ground of reversal.

Appeal from Trego district court; ISAAC T. PURCELL, judge. Opinion filed November 4, 1922. Affirmed.

*A. D. Gilkeson,* of Hays, and *Herman Long,* of Wakeeney, for the appellants.

*E. A. Rea,* and *E. C. Flood,* both of Hays, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to determine the interest of plaintiffs in 240 acres of land in Trego county acquired under an oral agreement, for specific performance of the agreement, and to quiet their interest and estate as against any claims or interests of the defendants. In a trial in which a number of special questions were submitted to the jury the court, on the findings made, rendered judgment in favor of the plaintiffs. Defendants appeal.

In a former review of the case matters of pleading were considered and determined. (*Kuhn v. Kuhn,* 107 Kan. 391, 191 Pac. 487.) It appears that John Kuhn, sr., owned 480 acres of land, of which two quarters were in Ellis county and one in Trego county. Prior to his death, which occurred on March 8, 1912, he executed a will giving to his wife, Barbara Kuhn, 240 acres of his land, and the remainder was devised to his sons, John, Frank and Joseph, each to get 80 acres. The wife was to take her share from the whole as she might elect, and the division of the three 80's was to be made among her sons as she might deem best. The personal property was given to the wife,

except that $500 out of it was bequeathed to the daughter, Agnes Weigel, as her share in the estate. The will was duly probated and the widow elected to take under the will, and early in 1913 she made a selection of her share. No selection or division of the remainder among her sons was made, although some steps were taken towards a division, which were not completed. Subsequently to the death of her husband, Barbara purchased an additional 80 acres which adjoined the quarter section in Trego county. The land in Ellis county was more valuable that that in Trego, which was unimproved. Each quarter section in Ellis county was appraised at $5,000 and the one in Trego county at $2,000. At the death of their father the three sons were single, but Joe was married in 1913, and in 1914 John J. was married to the plaintiff, Maggie Kuhn, and Frank Kuhn is still unmarried. Joe and his wife lived with his mother for a time and Frank has always lived at the old home. After the marriage of John J. he resided elsewhere, and in June, 1915, was employed in running a grain elevator at Studley, Kan. About that time Joe was insisting on a division of the land, and Barbara was then sixty-five years old and unable to operate the farm. She desired that John should quit working for others and should come back and work a part of the Kuhn land. All of her sons were called together and the matter of division of the land was discussed. The difference in the values of the several parts of the land made an equal division impracticable, but the conference resulted in an agreement that a division should then be made and that John J. should take the Trego land comprising 240 acres as his share; that Joe should take 160 acres of the Ellis county land, known as the Knoll quarter; and Frank was to take the home quarter. It was agreed that each son was to give his mother during her life as rental one-fourth of the crops raised on 80 acres of each share, and it was stipulated that John J. Kuhn was to give her such share as should be raised on a designated 80 acres of the tract allotted to him. It was further agreed that for the protection of the mother the legal title of all the land should remain in her during her life, but that at her death the shares thus apportioned to each son should vest absolutely in him. In pursuance of the agreement and to make the agreed partition complete, each son executed a deed conveying his interest in all the land to his mother and these deeds were duly recorded. On the faith of the agreement, and in June, 1915, John J. with his wife and son moved upon the Trego county land set apart to him and began

making improvements thereon. He built a barn, a granary, additions to the house, fences, and dug a well, expending over $1,600. He continued in the possession of the land from June, 1915, when the agreement was made, until he died, in October, 1918. Since his death the plaintiffs, his widow and son, have been in possession of the part allotted to him. Joe Kuhn took possession of the land which was apportioned to him and Frank has lived on the home place set apart as his share. After the death of John J. his mother appears to have held the opinion that his wife and son inherited no interest in the land, but that it reverted to his mother and brothers. She remarked to Maggie that the land "was to be yours and Johns if he had lived, now he is dead and you have nothing more to do with it." After John's death his mother denied plaintiffs' right to the land under the agreement, and since the commencement of this action she attempted to convey 160 acres of it to others.

Upon the evidence, findings were made by the jury to the effect that an agreement had been made substantially as related, by which John J. was to have the Trego county land, and upon her death was to be vested with a complete title to it; that Joe and Frank joined their mother in the agreement; that in pursuance of the agreement John J. entered into the possession of the land and thereafter made permanent and valuable improvements thereon; that such possession continued until his death and his widow and son have continued in possession of it until the commencement of this action; that a part of the specified rental had been paid and that the plaintiff was ready and willing to pay any amount that may be due. The court appears to have adopted most of the findings of the jury, or at least included them in the more ample findings made for itself, and then adjudged that plaintiffs were entitled to the relief sought, including the use and occupancy of the land subject to the right of Barbara Kuhn to receive during her life one-fourth of the crops grown on a certain 80 acres of it; that upon the death of Barbara Kuhn they were to be the owners in fee simple of the land, free from any right, title or interest of the defendants in it; and also that any and all deeds of Barbara Kuhn attempting to convey the portion of the lands to Joe or Frank Kuhn be canceled and set aside. There was a further provision in the decree that certain sums due from plaintiffs to Barbara for rental of the land should be paid by plaintiffs, and she was awarded a lien on the land as a security for the payment of such rentals. It is recited in the judgment that the amount due

for rentals was tendered to Barbara in open court and that the interest on the claim for rental should cease on the date of the tender.

Defendants question the action of the court in overruling a demurrer to plaintiffs' amended petition. The allegations of the pleading set forth the claims of plaintiffs under the agreement substantially as they were stated in the original petition, the sufficiency of which was upheld on the former appeal, and are undoubtedly sufficient to warrant the findings and judgment of the court.

Error is assigned on the admission of a selection made by Barbara Kuhn of her portion of the devised land. It had been made a part of the record of the probate court and was properly authenticated. In view of the fact that plaintiffs' claim was based on an agreed division and upon a plan different from that made in the will, the matter of selection was not important. However, it was a part of the history of the estate and of the action of Barbara Kuhn with respect to it, and its admission cannot be regarded as prejudicial error.

The principal complaint upon this appeal is that the special findings to the effect that an agreement was made under which the son, John J., was given the equitable ownership of the land in controversy and had taken possession of it and made permanent improvements upon it, are not supported by the evidence. An examination of the record shows that while there is much conflicting testimony, that given in behalf of the plaintiffs abundantly sustains the findings essential to the support of the judgment. There is not only the direct evidence of Maggie Kuhn that the agreement was made, and some admissions of Barbara Kuhn, but it was also confirmed by the testimony of other witnesses to whom Barbara admitted that the division of the land had been made as claimed by plaintiffs. This evidence was reënforced by a number of circumstances, including the conduct of the parties. Among these is the circumstance that in 1915 and about the time that the agreement was made, John J. Kuhn gave up his position and home in another county and went into the possession of the Trego county land. He began improving and farming it as his own and had paid a rental on a part of it to his mother, and during this time no question as to his ownership was raised until after his death in October, 1918. It further appears that Joe Kuhn took possession of the Knoll quarter in 1915 about the time the agreement was made, paying rent to his mother on 80 acres of his share. Frank also remained on the home place which under the

agreement was to be his share. There was the further circumstance of the execution by the sons of deeds conveying their interest to their mother, which warrants the inference of a purpose to place the legal title in her so that the agreement might be effectually carried out, and also as security to her that the rentals agreed upon would be paid. It is said that in cases like this where there is reliance upon a gift and on part performance of an oral agreement conveying land that these must be clearly, definitely and satisfactorily shown, and that tested by that rule the proof was insufficient. That test is to be applied by the trial court. It belongs to it to determine the force and effect of the evidence and decide whether or not the agreement has been satisfactorily shown. There was substantial and convincing evidence given in support of the findings and hence it must be presumed that the court in weighing the evidence and in making its findings applied the proper test. (*Wooddell v. Allbrecht,* 80 Kan. 736, 104 Pac. 559; *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596; *Hegwood v. Leeper,* 100 Kan. 379, 164 Pac. 173; *Taylor v. Holyfield,* 104 Kan. 587, 180 Pac. 208.)

The complaint is made of certain instructions given to the jury. It is to be remembered that this was an equitable case and the jury was called to act only in an advisory capacity. Special findings of the jury were returned, as we have seen, but the court, as was its right, made independent findings which conformed to some made by the jury, practically covering the entire case, and its findings so made warrant the assumption that the proof was clear and satisfactory to it. The instructions to the jury are therefore not so important as in cases triable by a jury as a matter of right. The court having given independent consideration to the evidence and made complete findings of fact, errors, if any were made, would not require a reversal. However, we discover no material error in the rules laid down by the court in its charge. Other objections are suggested, but we find nothing substantial in them.

An examination of the evidence upon which the findings were based leads us to conclude that a just judgment was rendered and that none of the errors assigned warrant a reversal.

Judgment affirmed.