No. 45,544

BERT J. STRATMANN, OTTO STRATMANN and MATHILDA STRATMANN, *Appellees,* v. ERVIN H. STRATMANN, *Appellant,* and SYBIL STRATMANN, His Wife, Defendant.

(465 P. 2d 938)

Opinion filed March 7, 1970.

*George D. Miner,* of Ellsworth, arged the cause and *Paul L. Aylward,* of Ellsworth, was with him on the brief for appellant.

*John V. O'Donnell,* of Ellsworth argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: This appeal is from a judgment quieting plaintiffs' title to eighty acres of land in Ellsworth county, Kansas. The defendant claims an interest in the minerals. The case was submitted to the trial court on the pleadings. The parties stipulated a judgment should be entered by the court based upon its construction of a reservation of oil and gas by cotenants in a prior partition action.

In the petition plaintiffs allege ownership of fee simple title to the West Half of the Northwest Quarter (W/2NW/4) of Section One (1), Township Seventeen (17) South, Range Ten (10) West, in

Ellsworth county, Kansas. (This is the 80 acres in question.) Their claim of title includes both the surface and the oil and gas interests.

In the answer defendant, Ervin H. Stratmann, claims to own an undivided one-fifth (⅕) interest in the oil, gas and minerals underlying said real estate for so long as oil and gas, or either of them, are produced from the West Half of the Northwest Quarter (W/2NW/4) of Section One (1) and the Northeast Quarter (NE/4) of Section Two (2), all in Township Seventeen (17) South, Range Ten (10) West, in Ellsworth county, Kansas, or any part thereof. (This is the 240 acres referred to herein.) Defendant alleges this interest in the oil and gas was reserved to him in a partition action between all the present parties in 1961. The pertinent language of the reservation of interest is quoted in the answer and reads as follows:

"That oil and/or gas is being produced at this time from the West Half of the Northwest Quarter (W/2NW/4) of Section One (1), and the Northeast Quarter (NE/4) of Section Two (2), in Township Seventeen (17) South, Range Ten (10) West, in Ellsworth County, Kansas and the several part owners as are hereinafter by the court found and determined are each receiving their proportionate share of the oil runs and proceeds therefrom and such mineral interests should not be partitioned and the partition of the last described real estate should be made subject to the mineral rights of the several part owners thereof as hereinafter determined for such a period of time as oil and/or gas or either of them is being produced in paying quantities from said real estate, and upon the termination of production of such oil and/or gas, the rights of all of the several part owners thereof as is hereinafter found and determined, should terminate, so that the title thereto shall at such time merge and vest in the then owner, or owners, of the surface of such real estate."

Defendant further alleges that oil has been continuously produced and marketed from the NE/4 of Section Two and that he is the owner of an undivided one-fifth (⅕) interest in the oil, gas and minerals under the entire 240 acres including the 80 acre tract claimed by plaintiffs.

In their reply plaintiffs admit the order reserving an oil and gas interest was entered in the partition action. They admit that oil has been and now is being produced and marketed from the NE/4 of Section Two. For further reply plaintiffs allege that when the land was partitioned it was subject to three separate oil and gas leases, that production from wells located on the eighty acre tract has ceased and that the oil lease thereon has been released. They further allege that all title and interest of the defendant, Ervin H.

Stratmann, in the eighty acre tract has terminated because production has ceased on the eighty acres.

With the pleadings on file the parties agreed and stipulated that the case should be submitted to the court "on the pleadings for determination of the question of law presented." On being advised of the stipulation the trial court considered the case, found generally in favor of plaintiffs and quieted plaintiffs' title to the eighty acre tract against any right or claim of the defendants. The defendant, Ervin H. Stratmann has appealed.

In their brief plaintiffs (appellees) quote from a portion of the order of partition not set forth in the pleadings on file in the district court. As previously noted the parties by stipulation submitted their case on the pleadings.

When the parties by stipulation submit a case on the pleadings the trial court should consider the case entirely on the allegations contained in the pleadings. (*Whitaker v. Douglas,* 177 Kan. 154, Syl. ¶ 3, 277 P. 2d 641.) The court is not justified in reaching out and making additional facts a part of the pleadings when ruling upon such a motion. (*Dearborn Motors Credit Corporation v. Neel,* 184 Kan. 437, 444, 337 P. 2d 992.) If matters outside the pleadings are presented to the court on a motion for judgment on the pleadings, the motion may be treated as one for summary judgment and disposed of as provided in K. S. A. 60-256. In such case the parties should be given reasonable opportunity to present all material pertinent to the questions involved. (K. S. A. 60-212 (*c*).) This was not done in the present case.

In the court below the parties agreed to submit their case to the court on the pleadings, but they do not now agree on what was considered by the court in reaching its decision. Under the stipulation of the parties and our rules of practice we must arrive at a decision based upon the pertinent facts contained in the pleadings. The quotation from the order of partition set out in appellees' brief as an additional statement of facts does not appear in the pleadings and will be disregarded by this court.

From the pleadings we learn the following pertinent facts. The parties to this action owned fee simple title to 240 contiguous acres of real estate as cotenants. This ownership included both the surface interests and the minerals in place. The parties had executed three separate oil and gas leases covering eighty acres each. Together these three leases covered the entire 240 acre tract. One of

these leases covered the eighty acre tract now in question. When the partition action was filed oil was being produced from wells located on the eighty acre tract as well as on other portions of the 240 acres being partitioned. Production has since ceased from wells located on the eighty acre tract now in litigation. The oil and gas lease on this eighty acres has been released. Production has continued from wells located on the balance of the 240 acre tract.

The appellant, Ervin H. Stratmann, contends the reservation of interest in the partition action covered the minerals in place under the entire 240 acres for as long as oil is produced from any well located on the 240 acres.

The appellees contend and the district court held the reservation of interest covered only royalty rights under the separate prior leases and when production ceased on the eighty acres the reservation terminated on the eighty acre tract.

In a partition action the district court is vested with plenary powers to make a just and equitable partition between the parties and to secure their respective interests. (See *Home-Stake Production Co. v. Tri-State Pipe Co.*, 197 Kan. 163, 415 P. 2d 377, and G. S. 1949, 60-2114 now K. S. A. 60-1003 (*d*).) The general rules governing the construction and interpretation of judgments apply in partition proceedings. A partition of real estate by decree is a judgment of the court. To arrive at a construction and interpretation of such decree the intention of the court rendering the decree should be determined and when determined should be controlling. (68 C. J. S. Partition § 120, pp. 179, 180.) We here seek to determine the intention of the district court when it entered the order reserving the interests in oil and gas in the partition action.

In 3A Summers, Oil and Gas, 2nd Ed. § 599, p. 240, it is stated:

"During the last half century there has been an undue amount of litigation involving the creation and transfer of oil and gas royalties by deed and reservation. This litigation has concerned such royalties created both before and after lease for oil and gas. Several factors have contributed to this situation. Some of the more important are (1) a lack of understanding of the distinction between an oil and gas royalty and a mineral estate or interest in oil and gas in place; (2) application to royalty conveyances by some courts the common law rule that a grant of the profits or proceeds from land amounts to a grant of the land itself; and (3) the inability of draftsmen to employ terminology expressive of an intent to grant or reserve a royalty interest as distinguished from a mineral estate or interest. . . ."

To arrive at a correct decision in this case we must first understand the common meanings of the terms "royalty interest" and

"mineral interest." These terms have been defined by this court and distinguished in many of our decisions. (See *Bellport v. Harrison,* 123 Kan. 310, 255 Pac. 52; *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463; *Rathbun v. Williams,* 154 Kan. 601, 604, 121 P. 2d 243; *Hickey v. Dirks,* 156 Kan. 326, 333, 133 P. 2d 107; *Lathrop v. Eyestone,* 170 Kan. 419, 227 P. 2d 136; *Baker v. Hugoton Production Co.,* 182 Kan. 210, 320 P. 2d 772, and *Magnusson v. Colorado Oil & Gas Corp.,* 183 Kan. 568, 331 P. 2d 577.)

The term "royalty interest" generally refers to a right to share in the production of oil and gas at severance. It is personal property and concerns the proceeds from oil and gas leases if and when there is production.

The term "mineral interest" as commonly used refers to the oil and gas in place and constitutes a present ownership of an interest in real property. (*Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 368 P. 2d 19.) A prime characteristic of a mineral interest is the right to enter the land to produce and carry on production activities. This right may be leased to others. (Williams and Meyers, Oil and Gas Law, Manual of Terms, p. 232.)

The meanings of these two terms are discussed and the terms are distinguished by Professor William R. Scott in his article, The Creation of Oil and Gas Royalty and Mineral Interests. The article appears in Vol. 23 Journal of the Bar Association of Kansas at page 234. We recommend this article to those who are not familiar with the terms.

The appellant relies on *Baker v. Hugoton Production Co.,* supra; *Magnusson v. Colorado Oil & Gas Corp.,* supra; and *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* supra. These cases involved the construction of written instruments which conveyed or reserved a fractional interest in oil under real estate. The instruments were construed by this court as conveying or reserving an interest in the minerals in place, an estate in real property. Since the interests covered minerals in place production from any portion of the described real estate was sufficient to perpetuate the mineral interest in the entire acreage.

The appellees, on the other hand, rely on *Stamper v. Jones,* 188 Kan. 626, 364 P. 2d 972, and *Dewell v. Federal Land Bank,* 191 Kan. 258, 380 P. 2d 379. They also rely on passages taken from the Baker and Shepard cases.

In *Stamper* an action was filed to cancel oil and gas leases as to

the undeveloped portions based upon breach of the implied covenant to develop. The interests referred to in that action were created by oil and gas leases. The opinion concerned itself with royalties resulting from leases.

In *Dewell* a term mineral interest under a half section of land was reserved in a deed. The reservation ran for a primary term of twenty years and as long thereafter as oil was produced from the premises. The interest was leased and the lease on this half section was unitized with leases on other land. Production was obtained on the other land. There were no producing wells drilled on the half section of land. The court held that production on the other land did not perpetuate the mineral interest on the half section beyond the primary term. To perpetuate the interest production had to come from the half section.

A mineral interest normally includes a royalty interest in the sense that a mineral owner who has joined in a lease becomes a royalty owner. (See *Hinkle v. Gauntt*, 201 Okl. 432, 206 P. 2d 1001.) By virtue of the ownership of the minerals in place and the rights created by the lease the mineral owner holds an interest in the lease royalties. The royalties in such case are dependent upon the terms of the lease which is carved out of the mineral interest. Such a royalty interest may be made dependent upon continued production from the lease and in such case will expire or terminate if production under the lease ceases. (*Stamper v. Jones*, supra.)

A mineral interest may also be reserved for a period so long as production from the land continues. We have designated such an interest a base or determinable fee. (*Wilson v. Holm*, 164 Kan. 229, 188 P. 2d 899.) It may be dependent upon continued production but the event which determines the interest must be found in the instrument creating it. The interest is not created by nor is it dependent upon a particular oil lease.

If the mineral interest is in a 240 acre tract continued production will perpetuate the interest regardless of whether one or more leases cover the minerals. The only condition necessary to perpetuate such an interest is that there be production. One producing well on the premises is sufficient to perpetuate the interest. (*Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, supra.)

We now concern ourselves with the language used by the district court in partitioning the 240 acres and reserving to the cotenants the interests in the oil and gas. The legal description of the land

affected by the decree includes 240 contiguous acres of real estate. The court first stated that oil was being produced from the 240 acres and that the cotenants were receiving their proportionate share of the oil proceeds. Then the court found and determined, "such mineral interests should not be partitioned and the partition of the last described real estate should be made subject to the mineral rights of the several part owners".

Up to this point the defendant as a cotenant owned a fractional interest in both the surface interests and the minerals in place. The interest reserved is referred to as a "mineral interest". The partition of land was "made subject to the mineral rights of the several part owners". The mineral rights owned were underlying the 240 acres described. The interest to be reserved was carved out of the entire 240 acres owned by these parties as cotenants.

When the term of the reservation was set by the court the interest was "determined for such a period of time as oil and/or gas or either of them is being produced in paying quantities from said real estate". Again "said real estate" refers to the 240 acres for no other real estate description appears in this portion of the decree. If the reservation was intended to cover less than the entire interest in minerals owned by defendant some further refinement was necessary to limit the same. Specific oil and gas leases were not mentioned. Royalties accruing from the leases were not mentioned.

The language employed by the court in the last portion of this reservation indicates a single termination date at which time the rights of the several part owners would end. The court provided "upon termination of production" the rights reserved should terminate "so that the title thereto shall at such time merge and vest" in the surface owners. "At such time" refers to a single termination date. The terminology used is generally applied to interests in real property. If the interest reserved was only a royalty interest under a lease there would be no merging or vesting of the interest on termination.

Although the land was subject to three oil and gas leases, each covering eighty acres, no attempt was made by the district court to identify the leases and the royalties from these leases were not reserved except as they followed the ownership of the mineral interests reserved. The reservation was not dependent upon continued production from specific leases. Instead the interest was

made dependent upon production from the 240 acres from which the mineral interest was reserved.

It is generally held that where land held in common is divided by a decree in partition in which it is provided the mineral rights in the whole of the land shall remain undivided, the reservation reserves to the common owners the minerals in place under the land divided. (68 C. J. S., Partition § 120 (b), p. 181.)

The interest reserved to each common owner in the present case was a determinable fee in the minerals in place under the entire 240 acres of land described. The interests were limited and determinable at such time as production of oil and gas or either of them in paying quantities ceased from the 240 acres described. Since production continues from wells located on a portion of the 240 acres the defendant continues to own an undivided one-fifth interest in the oil and gas underlying the entire 240 acres, including the 80 acres which are the subject matter of this action. Said interest shall continue so long as oil and gas or either of them is produced in paying quantities from the 240 acres described or any part thereof.

The judgment is reversed and the case is remanded to the district court with instructions to enter judgment in favor of the parties in accordance with the views expressed in this opinion.