No. 46,387

Mary T. Smith, *Appellee*, v. Home Royalty Association, Inc., *Appellant*

(498 P. 2d 98)

Opinion filed June 10, 1972.

*Robert H. Cobean*, of Wellington, argued the cause and was on the brief for the appellant.

*Leland E. Nordling*, of Kramer, Nordling & Nordling, of Hugoton, argued the cause, and *A. E. Kramer, Bernard E. Nordling*, and *Ted F. Fay, Jr.*, of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: The plaintiff filed this action to quiet title to the NW ¼ of Section 14, Township 28S, Range 39W, Stanton County, Kansas, against the defendant's term mineral interest therein. The dispute relates to the question of whether the said term mineral interest (created 12-10-28) has been extended beyond its primary term (ending 12-10-49) by production commenced within the

primary term on an adjacent quarter, both quarters being within a unitized leasehold.

The case was submitted to the trial court upon stipulated facts. A jury trial was waived and the trial court found in favor of the plaintiff, quieting title in plaintiff as against the defendant. The defendant appeals from this judgment.

The case was tried on a document entitled, "Stipulation, Designated Pre-trial Order." We will set forth that part of the stipulation necessary to a determination of this appeal.

On December 31, 1928, Moores conveyed to the Home Royalty Association an undivided one-half interest in and to all of the oil, gas, casinghead gas and all other minerals in and under, or which may be produced from the NW ¼ 14-28S-39W, Stanton County, Kansas, for a period of twenty-one years from December 10, 1928, and as much longer thereafter as oil, gas or other minerals are produced from said land.

On April 27, 1940, a sheriff's deed was executed and delivered to the Federal Farm Mortgage Corporation conveying said northwest quarter. It was admitted that the sheriff's deed did not extinguish the term mineral interest owned by the defendant.

On November 17, 1941, an oil and gas lease was executed by Federal Farm Mortgage Corporation to Joe E. Denham on said northwest quarter. On November 28, 1941, an oil and gas lease was executed by the defendant to said Joe E. Denham on said northwest quarter. Each of these leases was subsequently assigned to the Stanolind Oil and Gas Company. On August 9, 1945, said northwest quarter was conveyed by Federal Farm Mortgage Corporation to Rozella M. Glenn, subject to the mineral deed to the defendant. Under date of November 29, 1946, a notice of unitization was filed by Stanolind Oil and Gas Company and subsequently, on November 3, 1948, an order was made by the State Corporation Commission permitting said unitization. On January 31, 1946, a stipulation and agreement was made by the Federal Farm Mortgage Corporation and Glenn, creating a term mineral interest in the same undivided one-half of the minerals in which the defendant then owned a term mineral interest. The newly created term mineral interest recognized the existence of the defendant's mineral interest and it was to commence only in event the defendant's mineral interest terminated prior to or during a period of eleven years from and after December 10, 1949. On

April 16, 1948, Stanolind Oil and Gas Company filed a proof of extension of leases by production showing production from a gas well on the NE ¼ 14-28S-39W. It was stipulated that no gas well was ever drilled on the NW ¼ 14-28S-39W. Under date of June 4, 1953, Federal Farm Mortgage Corporation and the defendant made a stipulation and agreement that the defendant's mineral rights acquired and held by virtue of a mineral deed above described has been and will be continued in full force and effect by the production from said gas well on Hinshaw Gas Unit 'A'. On August 25, 1949, Glenn and wife conveyed said northwest quarter to Campbell. Under date of March 1, 1968, Campbell and wife conveyed said northwest quarter to the plaintiff, Mary T. Smith. It was further stipulated that gas was produced from said northeast quarter about February 24, 1948, and that from said time the, defendant has been paid royalties up to about May 6, 1968.

The parties stipulate that there are the following issues of law:

"A. Has there been a defeasance of the Home Royalty Association, Inc. mineral interest by virtue of the failure to drill a gas well in the NW ¼ 14-28S-39W, Stanton County, Kansas, even though, during the primary term of said term mineral interest a gas well was drilled and gas was and still is being produced in paying quantities on the NE ¼ 14-28S-39W, Stanton County, Kansas, which quarter section is included in the same unitized area as the NW ¼ 14-28S-39W, Stanton County, Kansas?

"B. Are the Plaintiffs barred, by K. S. A. 60-503, K. S. A. 60-507, K. S. A. 60-508 or any other statute of limitations, from maintaining this action, seeking to challenge the Defendant's, Home Royalty Association, Inc., open, exclusive and continuous possession of said undivided one-half of the minerals in, under or that may be produced therefrom, under a claim knowingly adverse or under a belief of ownership?"

We believe the question of law A can be more simply stated. A conveys to B the oil, gas and other minerals under tract one for a term of twenty-one years and as long thereafter as oil, gas, or other minerals are produced from said land. During the definite term tract one is unitized with tract two for the production of oil and gas. Production is obtained from tract two within the definite term and production continued thereafter. In this factual situation, does production from tract two fulfill the production requirements in the original conveyance from A to B?

Each of the parties have comprehensively reviewed the previous decisions of this court. We have carefully analyzed each of these decisions. We have concluded that only two of the cases have a direct bearing on the issue involved here. They are *Dewell v.*

*Federal Land Bank,* 191 Kan. 258, 380 P. 2d 379, and *Stratmann v. Stratmann,* 204 Kan. 658, 465 P. 2d 938.

In *Dewell v. Federal Land Bank,* supra, the defendant conveyed the land to the Federal Farm Mortgage Corporation, reserving an undivided one-half interest in minerals for a term of twenty years from and after May 13, 1939, and "so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises are being developed or operated." The Federal Farm Mortgage Corporation in 1943 conveyed the real estate to the plaintiff, subject to the mineral interest. In 1947, the plaintiff executed an oil and gas lease with the usual contingency for perpetuation by production, a shut-in royalty clause, and a provision for unitization. The defendant in 1947 also executed an oil and gas lease with like provisions. Subsequently, the lessee executed a declaration that it unitize the leasehold on the land above conveyed with the leasehold on other land. During the primary term of the mineral interest held by the defendant, gas was produced from other land within the unitized area in paying quantities. The gas well was not connected to a pipeline until 1960 and in the meantime shut-in royalty payments were made to each of the parties. We held that the shut-in royalty clause contained in the leases was for the sole benefit of the lessee. It was a privilege granted the lessee in lieu of production. It does not purport to convey any rights to anyone else. It does not purport to extend the interest of the holders of the mineral rights. We said the mineral reservation and the separate oil and gas leases executed by the parties should not be construed together. We pointed out that the instruments were not executed by the same parties and they were not contemporaneous since the reservation was made in a deed executed in 1941, the landlord executed his lease in 1947, and the defendant executed its lease in 1947. We concluded there was no indication of any joint action between plaintiff and defendant at the time the leases were executed. We based our decision in favor of plaintiff on a holding that shut-in royalty payments were not equivalent to "production" or "being developed or operated."

In reaching that conclusion we stated: "The owner of a defeasance mineral interest cannot change the conditions by which the interest is to continue beyond the primary term, by any provision in an oil and gas lease to which the landowner is not a party." (p. 263.) We construe this language to mean that the owner of

the mineral interest, the defendant herein, could not by the terms of the oil and gas lease executed by it, change the provisions in the original mineral reservation which required production from the land described therein.

In *Stratmann v. Stratmann,* supra, we clarified *Dewell* by saying:

"In *Dewell* a term mineral interest under a half section of land was reserved in a deed. The reservation ran for a primary term of twenty years and as long thereafter as oil was produced from the premises. The interest was leased and the lease on this half section was unitized with leases on other land. Production was obtained on the other land. There were no producing wells drilled on the half section of land. The court held that production on the other land did not perpetuate the mineral interest on the half section beyond the primary term. To perpetuate the interest production had to come from the half section." (p. 663.)

We further stated:

"A mineral interest may also be reserved for a period so long as production from the land continues. We have designated such an interest a base or determinable fee. (*Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899.) It may be dependent upon continued production but the event which determines the interest must be found in the instrument creating it. The interest is not created by nor is it dependent upon a particular oil lease." (p. 663.)

In this case there was a common ownership of 240 acres of land and three oil and gas leases had been executed prior to partition on each of three eighties. The land was then partitioned but the minerals were left in common ownership. In the partition action the court found:

"That oil and/or gas is being produced at this time from the West Half of the Northwest Quarter (W/2NW/4) of Section One (1), and the Northeast Quarter (NE/4) of Section Two (2), in Township Seventeen (17) South, Range Ten (10) West, in Ellsworth County, Kansas and the several part owners as are hereinafter by the court found and determined are each receiving their proportionate share of the oil runs and proceeds therefrom and such mineral interests should not be partitioned and the partition of the last described real estate should be made subject to the mineral rights of the several part owners thereof as hereinafter determined for such a period of time as oil and/or gas or either of them is being produced in paying quantities from said real estate, and upon the termination of production of such oil and/or gas, the rights of all of the several part owners thereof as is hereinafter found and determined, should terminate, so that the title thereto shall at such time merge and vest in the then owner, or owners, of the surface of such real estate." (p. 659.)

Production ceased from the wells located on the eighty acres in litigation, but continued on the balance of the land. We held that

the continued production on the balance satisfied the requirement of production of the eighty in litigation.

We believe the rule of law promulgated by these cases has established a controlling principle. The facts in the case now before the court clearly disclose that the oil and gas lease executed by the defendant had no relation or connection with the oil and gas lease executed by the plaintiff's predecessors. The application of the rule in *Stratmann* that the requirement of continued production in the original mineral interest granted defendant must be found in the instrument creating it, and that the requirement for production cannot be dependent or modified by a particular oil lease, requires us to answer stipulated question of law A in the affirmative. We are fully aware that the rules of law stated in *Dewell* and *Stratmann*, and here reiterated, are contrary to the rule in Oklahoma and Texas as disclosed by *Panhandle Eastern Pipeline Company v. Isaacson*, 255 F. 2d 669 (10th Cir. 1958), and *South. Royalty Co. v. Humble Oil & Ref. Co.*, 151 Texas 324, 249 S. W. 2d 914.

The rationale of the Texas and Oklahoma cases is appealing; however, the holdings in *Dewell* and *Stratmann* have become a rule of property in this state. The rule should not be changed in the absence of other controlling circumstances, even though logic might be effectively presented for a different holding.

Defendant asserts question of law B should be answered in the affirmative. The effect is to find that plaintiff's cause is barred by adverse possession of defendant (K. S. A. 60-503) or by limitations (K. S. A. 60-507).

The prayer of plaintiff's petition is for a judgment that plaintiff is the owner in fee simple of the subject land. The prayer of the answer is for judgment that defendant is the owner of a base or determinable fee in one-half the minerals in the subject land.

We have difficulty determining when defendant commenced holding the mineral interest "knowingly adverse or under a belief of ownership." Prior to the expiration of the base term (expired 12-10-49) the defendant's mineral interest had to be based on the original mineral conveyance of 12-10-28. After 12-10-49, defendant's claim to the mineral interest was based on a misconception of the law as hereinbefore discussed and determined. It follows that the record title owner of all other interest in the property could have filed suit to recover the royalty payments and

for a declaration of his rights. The plaintiff and her predecessors in title could not have successfully maintained that the outstanding mineral interest was eliminated since it was not subject to reversion to plaintiff's predecessors in title until December 10, 1961. This was the date the reverter mineral interest of Federal Farm Mortgage expired. The reverter mineral interest of Federal Farm Mortgage continued the terms of the original mineral interests of defendants for eleven years. Since plaintiff's predecessors in title could not maintain an action to set aside the mineral estate until December 10, 1961, we conclude that defendant could not hold adversely to her prior to that time.

We also note the rule that a tenant cannot acquire title by adverse possession against his cotenants. The rule as applied to mineral interests is stated in 3 Am. Jur. 2d, Adverse Possession, § 221, pp. 317, 318, as follows:

"After severance of the surface and mineral estates, the mineral owner must be disseised to lose his rights, and there can be no disseisin by any act which does not actually take the mineral out of his possession. It follows of course that the execution or recording of deeds or leases of the minerals does not give title to the minerals by adverse possession.

"In accordance with the general rule as to cotenants, it seems that where there is a severance of the surface and mineral estates the possession of the minerals by one cotenant does not give him title by adverse possession as against his cotenants unless there is an ouster of which they have notice."

The reasoning as to when adverse possession of defendant could commence, also controls the statute of limitation issue. Plaintiff did not have a cause of action to eliminate the mineral interest until December 10, 1961. Since fifteen years has not expired, plaintiff's cause of action is not barred.

The judgment is affirmed.