TEXARO OIL COMPANY, Plaintiff, Appellee, and Cross–Appellant.

v.

Ralph W. Mosser, Defendant, Appellant, and Cross–Appellee.

Ralph W. MOSSER and Meta C. Mosser, joint tenants; Kathleen O'Connell; Walter T. Cooper; Gulf Oil Corporation of Michigan; A. G. Golden; Langdon G. Williams; Vincent T. Larson; Jase O. Norsworthy; James W. Reger; Dennis C. Rehrig; The Equitable Life Assurance Society of the United States; Production Credit Association, Mandan, North Dakota; Donald H. Brengle; Ethel C. Brengle; James Weldon Birdwell; and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants.

Civ. No. 9740.

Supreme Court of North Dakota.

Oct. 27, 1980.

Pringle & Herigstad, Minot, for plaintiff, appellee, and cross-appellant; argued by Thomas A. Wentz, Minot.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant Kathleen O'Connell; argued by Ward M. Kirby, Dickinson.

Beyer & Holm, Dickinson, for defendant Ralph W. Mosser; submitted on brief.

SAND, Justice.

This is an appeal from a judgment resulting from a quiet title action regarding adverse claims to an undivided one-half interest in the oil, gas, and other minerals in the following real estate located in Billings County, North Dakota:

Township 141 North, Range 101
    All of Section 17;
    South Half of the North Half and the
    Southeast Quarter of Section 20;
    South Half of Section 21.

Walter T. Cooper [Cooper] was the original owner of this undivided one-half mineral interest. By virtue of several conveyances and a sheriff's sale, three parties each claim an interest of this undivided one-half mineral interest, some of which are in dispute. The total of these three claims ex-

ceeds the available one–half mineral interest.

Plaintiff, Texaro Oil Company [Texaro], claims a one–fourth interest in the minerals through a mineral deed given by Cooper and his wife to Geo. H. Anderson, dated 27 June 1958, and recorded 8 July 1958. Subsequent conveyances, the validity of which are not in dispute in this action, vested this one–fourth interest in Texaro.

Defendant Kathleen O'Connell [O'Connell] claims ownership of the following portion of the disputed minerals:

$^{139}/_{640}$ of the minerals in Section 17;

$^5/_{16}$ of the minerals in Section 20;

$^1/_8$ of the minerals in Section 21.

The basis of O'Connell's claim is a notice of attachment recorded on 15 Apr 1958 in the case of Adele F. McEntee, Plaintiff, versus Walter T. Cooper and wife, levying attachment on Cooper's one–half interest in the oil, gas, and minerals in the above–described real estate. The case between McEntee and Cooper resulted in a money judgment, levy, and sale of some of the attached minerals. A sheriff's deed to Adele F. McEntee was recorded on 6 June 1961. O'Connell is a successor in interest to McEntee.

Defendants Ralph W. Mosser and Meta Mosser[1] claim an undivided 200/1597.20 interest in the minerals in the above–described land. The basis of the Mossers' claim is a mineral deed given by Cooper to Ralph and Meta Mosser dated 14 Mar 1960, and recorded 18 Mar 1960. The Mossers assert that this mineral deed was pursuant to an option given to Ralph Mosser by Cooper on 28 Oct 1955, and recorded on 10 Dec 1957.

A brief graphic outline of the sequence of events will be helpful to understand the claims:

| | |
|---|---|
| 3-5-52 | Walter Cooper record owner |
| 10-28-55 | Option to Ralph Mosser for royalty |
| 4-15-58 | Notice of Attachment by O'Connell's predecessor in interest |
| 7-8-58 | Mineral Deed to Texaro's predecessor in interest |
| 11-5-59 | Judgment entered in Attachment action |
| 3-18-60 | Mineral Deed to the Mossers |
| 6-2-60 | Sheriff's Certificate of Sale |
| 6-6-61 | Sheriff's Deed |

The district court determined that O'Connell's claim had priority over the claims of Texaro and the Mossers, and that the Texaro claim had priority over the Mossers' claim. Thus, the district court divided the one–half mineral interest as follows:

| Land | Texaro | O'Connell | Mosser | Total |
|---|---|---|---|---|
| Section 17 | 160/640 | 139/640 | 21/640 | 0.5 |
| Section 20 | 3/16 | 5/16 | 0 | 0.5 |
| Section 21 | 1/4 | 1/8 | 1/8 | 0.5 |

Mosser appealed to this court, and Texaro filed a cross–appeal. We affirm.

The issues raised by this appeal are as follows:

1. Whether or not the option to purchase royalties meant or included the right to purchase mineral rights; and

2. Whether or not Texaro and the Mossers can collaterally attack the attachment process.

### I

The Mossers assert that the mineral deed dated 14 Mar 1960 and recorded 18 Mar 1960 was pursuant to the option[2] given to Ralph Mosser on 28 Oct 1955, and recorded on 10 Dec 1957. Thus, the Mossers claim that pursuant to *Nodland v. Plainsman Petroleum, Inc.*, 265 N.W.2d 252 (N.D.1978), the mineral deed relates back to the recording of the option and gives the Mossers priority over any claims arising after the recording.[3] We disagree.

The recorded option provides in pertinent part as follows:

"First party [Cooper] does hereby grant to second party [Mosser] the option to purchase a ⅛th of ⅛th royalty, covering:

All - 17;  S ½ N ½;  SE ¼ – 20;

S ½ - 21;  S ½ – 22–141–101;

"That the said right of option shall be exercised by second party on or before

---

1. Only Ralph W. Mosser, a joint tenant, is named in the notice of appeal. For purposes of this appeal we included both joint tenants. It does not alter the disposition of this case.

2. The option referred to by the Mossers is an option to purchase a royalty interest.

3. *Nodland*, 265 N.W.2d 252, concerned the exercise of an option through the purchase of the specific interests contained in the option, whereas in the instant case an option for royalties is alleged to be the equivalent of an option to purchase mineral rights.

Oct. 28, 1960, but should said party not exercise said option on or before said date, then said option shall become null and void and of no effect.

"That should said option be exercised, as above required, then the first party shall execute a proper deed of royalty."

The recorded mineral deed provides in pertinent part, as follows:

"[Walter T. Cooper] Conveys to second parties [Mossers] as joint tenants and not as tenants in common, their assigns, the survivors of said parties and the heirs and assigns of the survivor, an undivided 200/1597.20 mineral acre interest in and to all of the oil, gas, casinghead gas, casinghead gasoline and other minerals in and under and that may be produced . . ."

▪ The terms "mineral" and "royalty" are totally separable terms with distinct characteristics. This distinction is dealt with at length in I Williams and Meyers, Oil and Gas Law, § 302–307.4. The term "royalty interest" generally refers to the landowner's share in the production of oil and gas at severance. *Stratmann v. Stratmann,* 204 Kan. 658, 465 P.2d 938 (1970). A royalty interest is personal property and refers to the owner's right to receive a certain part of the proceeds from oil and gas, leases if and when there is production. *Stratmann v. Stratmann, supra.* A "mineral interest" is a real property interest created in oil and gas in place. *Stratmann v. Stratmann, supra.* The prime characteristic of a mineral interest is the right to enter the land to explore, drill, produce and otherwise carry on mining activities. *Stratmann, supra.* It is this attribute of operating rights that distinguishes a mineral interest from a royalty interest.

▪ Additionally, there are important differences between these two recordings. The grantee in the option is Ralph Mosser, and the grantees in the mineral deed are Ralph and Meta Mosser. Additionally, the quantities and interests described in the recordings are different. The interest described in the option is a one–eighth of one–eighth royalty, and the interest de-

scribed in the mineral deed is a 200/1597.20 mineral interest.

Because these terms represent two different interests and because of the difference between the two recordings, we conclude that the royalty option was not exercised by the mineral deed.

▪ The Mossers also contend that there should be a reformation of the option to the terms they claim they agreed on with Cooper. Reformation of a written instrument to conform to the true intention of the parties is permissible and parol evidence is admissible for that purpose. *Ell v. Ell,* 295 N.W.2d 143 (N.D.1980); *Oliver–Mercer Electric Cooperative, Inc. v. Fisher,* 146 N.W.2d 346 (N.D.1966). The parol evidence of an alleged mutual mistake for reformation must be clear, satisfactory, specific, and convincing. *Ell v. Ell, supra; Oliver– Mercer Electric Cooperative, supra.* The burden of proof is on the parties who allege the mistake to establish by competent evidence that the written instrument does not fully or truly state the agreement that the parties had intended to make. *Ell v. Ell, supra; Oliver–Mercer Electric Coop, supra.* The Mossers offered evidence to show Ralph Mosser's expectations and understanding of the royalty option. Ralph Mosser testified as follows:

"Q. Mr. Mosser, the option that Mr. Cooper gave you, what, in your mind, did that option give you, the right to what?

"A. It gave me the prior right and superior right to any mineral or royalty deal over this land.

    .     .     .     .     .

"Q. Now Mr. Mosser, the option that was recorded in 1957 refers to one– eighth of one–eighth royalty. Can you explain your understanding of that?

"A. No; I can't. At that time I didn't know much about royalty and minerals, the difference. I know now. But the intent was to give me a right to any sale or transaction.

"Q. And is it correct to say that you were understanding your–your understanding was you were going to be buying minerals.

"A. Yes."

■ Cooper did not appear at trial to corroborate the understanding and expectations of Ralph Mosser. The trial court found that Mosser's testimony did not include admissible evidence of the actual conversations between Mosser and Cooper upon which it would determine whether or not the option expressed the true intent of the parties. We agree that the evidence does not clearly, satisfactorily, specifically, and convincingly support reformation of the option to the expectations of Ralph Mosser. Accordingly, reformation is not available to the Mossers, and the mineral deed does not relate back to the option. Therefore, the Mossers' title dates from the recording of the mineral deed on 18 Mar 1960.

Because of our disposition of this matter, we need not consider whether or not the option agreement was covered by the statute of frauds, or whether or not the option agreement failed for lack of consideration.

## II

The recording of the notice of attachment by McEntee on 15 Apr 1958 created a lien of attachment on the minerals from that date. Section 32–08–10, NDCC. All parties taking from Cooper after that date took their interest subject to the attachment and any adjudication in *McEntee v. Cooper*. However, Texaro and the Mossers make several allegations regarding the validity of the attachment because of alleged irregularities in the attachment proceeding. O'Connell denies these allegations and claims they are an invalid collateral attack.

■ A judgment may not be collaterally attacked by a party to the action in which it is rendered or by one in privity with a party to the judgment. *Hull v.*

*Rolfsrud*, 65 N.W.2d 94 (N.D.1954). An exception to this rule is that a judgment may be collaterally attacked if the court lacks jurisdiction to enter the judgment and the lack of jurisdiction is obvious from the record. *Lende v. Wiedmeier*, 179 N.W.2d 736 (N.D.1970). Texaro and the Mossers have not challenged the court's jurisdiction in *McEntee v. Cooper*.

■ Texaro asserts that because their predecessor in interest [Geo. W. Anderson] was not given notice of the execution and levy in *McEntee v. Cooper*, their interests were not terminated by that action and the doctrine of collateral attack is not applicable. In support of their position, Texaro cites *Yttredahl v. Federal Farm Mortgage Corporation*, 104 N.W.2d 705 (N.D.1960), as being squarely on point and not distinguishable from the instant case. We disagree. *Yttredahl* involved a mortgage foreclosure in which five royalty holders were not given notice of the foreclosure as required by statute.[4] As a result none of the royalty holders were joined as defendants in the mortgage foreclosure action. The *Yttredahl* court addressed the rights of the royalty holders when it stated:

"The rights of a purchaser of the mortgaged premises, or purchaser of a part of the mortgage premises, who acquired title after the execution of the mortgage but before commencement of the foreclosure action, are not concluded by the judgment or decree in foreclosure proceedings to which he was not made a party." 104 N.W.2d at 707.

*Yttredahl* is distinguishable from the instant case. The statutory procedures for notice were not complied with in *Yttredahl*, but in the instant case, counsel for Texaro conceded that the statutory procedures for attachment were complied with. Texaro does not contend that the attachment statutes are unconstitutional, but assert that

---

4. The statute in effect at this time was Ch. 156, S.L. 1933, which provided in part:

"Before any action or proceeding shall be commenced to foreclose a mortgage on real property, a written notice ... shall be served

on the title owner of the real estate described in such mortgage, as shown by the records in the office of the Register of Deeds of the county in which said real estate is situated ...."

due process requires notice of execution and levy be given to any party taking an interest in the attached property after the notice of attachment has been filed. We believe that due process is satisfied by the filing of a notice of attachment, and any party acquiring an interest after that time takes the interest subject to the notice of attachment.

The procedure for attachment of property is set out in Chapter 32–08, NDCC, and the procedure for foreclosure of a mortgage is set out in Chapter 32–04, NDCC. These two procedures contemplate entirely different action and contain entirely different provisions, including the notice provisions. Consequently, we believe the notice requirements of *Yttredahl* are not applicable to the instant case.

The district court found that Texaro and the Mossers were in privity with Cooper, and thus they could not collaterally attack the attachment proceeding. We agree.

█ This court has addressed the question of privity in *Hull, supra,* when we stated:

> "In order to make a man a privy to an action he must have acquired an interest in the subject matter of the action either by inheritance, succession, *or purchase from a party subsequently to the action,* or he must hold property subordinately." 65 N.W.2d at 98. [Emphasis added].

Furthermore, a person is in privity if an acquired right is affected by the litigation at the time it is acquired. *Hull, supra.*

█ The record reflects that Texaro's interest traces back through S. M. Aronson and his wife, Dora J. Aronson. S. M. Aronson acquired his interest from Geo. H. Anderson and his wife, Evelyn S. Anderson. Geo. H. Anderson acquired his interest from Walter T. Cooper and his wife, Aina Cooper, via a mineral deed dated 27 June 1958, and recorded 8 July 1958.

The Mossers acquired their interest directly from Walter T. Cooper via mineral deed dated 14 Mar 1960 and recorded 18 Mar 1960.

Because the Mossers and the predecessor in interest of Texaro acquired their interest from Cooper after the notice of attachment was recorded, their interests were affected by the litigation at the time they were acquired. Therefore, Texaro and the Mossers cannot collaterally attack the attachment proceedings.

█ Furthermore, we believe that collateral attacks upon judicial proceedings should not be encouraged. There is a strong public interest in, at some point, laying a controversy to rest in a final adjudication. Justice Vogel, on behalf of this Court, in *City of Wahpeton v. Drake–Henne, Inc.*, 228 N.W.2d 324, 321 (N.D.1975), quoted the following from other sources:

> "It is for the public interest and policy to make an end to litigation * * * so that * * * suits may not be immortal, while men are mortal.... there should be at some point an end to litigation.... Let this be it."

This is especially true when the maintenance of the integrity of property rights acquired on the faith of judicial proceedings is involved. We believe that the solemnity of the recording system also requires us not to sanction a collateral attack in this situation. However, there may be some situation, such as when the court lacks jurisdiction or a situation of similar gravity, in which a collateral attack would be allowed.

In light of our disposition on this issue, we need not address the alleged irregularities in the attachment process.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.