No. 64,234

STANLEY KNELLER, KAY M. KNELLER, and EMERSON L. KNELLER, JR., *Appellees*, v. FEDERAL LAND BANK OF WICHITA, KANSAS, *Appellant.*

(799 P.2d 485)

Opinion filed October 26, 1990.

*Evan J. Olson*, of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *John W. Lann*, of Farm Credit Bank of Wichita, of Wichita, was with him on the briefs for appellant.

*Wayne R. Tate*, of Kramer, Nordling, Nordling & Tate, of Hugoton, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

MCFARLAND, J.: This is a declaratory judgment action seeking: (1) a judicial interpretation of a defeasible term mineral interest reservation contained in a warranty deed; and (2) a determination that plaintiffs are the owners of the one-half mineral interest in

dispute. The district court entered summary judgment in favor of the plaintiffs and defendant appeals therefrom.

All parties sought summary judgment. The case was submitted to the court on stipulated facts. There is no claim the case was not ripe for determination on motion for summary judgment. Further, as the matter was determined on stipulated facts and interpretation of a written instrument, de novo review is appropriate. As we held in *Stith v. Williams*, 227 Kan. 32, 605 P.2d 86 (1980):

"When a case is submitted to the trial court on an agreed stipulation of facts and documentary evidence, this court is afforded the same opportunity to consider the evidence as the trial court. *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979)." Syl. ¶ 1.

"Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine *de novo* what the facts establish." Syl. ¶ 2.

The facts may be summarized as follows. On March 6, 1944, defendant Federal Land Bank of Wichita (Land Bank) executed a warranty deed conveying to Moss Jensen a Morton County tract, to-wit:

"The East Half of the Southwest Quarter (E/2 of SW/4) and the West Half of the Southeast Quarter (W/2 of SE/4) of Section Twenty-nine (29), Township Thirty-three (33) South, Range Thirty-nine (39) West of the 6th P.M., containing 160 acres of land, more or less, according to the government survey thereof;

"Excepting and reserving unto party of the first part, its successors and assigns, an undivided 1/2 of all oil, gas and other minerals and mineral rights in, upon and under the above described real estate for a period of twenty years from and after July 30, 1940, and so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises are being developed or operated . . . ."·

The deed was duly recorded. Plaintiffs (Stanley Kneller, Kay M. Kneller, and Emerson L. Kneller, Jr.) are successors in interest of Moss Jensen.

On April 19, 1944, Moss Jensen and the Land Bank executed separate oil and gas leases on the tract to T. J. Wagner, Jr., for a term ending April 19, 1954, and as long thereafter as oil, gas, casinghead gas, or any of them are produced. The leases contained

a provision consenting to unitization. The leases were assigned to D. D. Harrington in 1944. In 1945, the leases were assigned by Harrington to Panhandle Eastern Pipe Line Company.

In 1950, the tract in question became a part of a 640-acre gas production unit. Later the same year Fidler 1-29, a Hugoton gas well, was drilled on the unit but not on the tract herein. Royalties attributable to the tract were paid on the basis of one-half to the Land Bank and one-half to plaintiffs' predecessor in interest as per the division order.

In 1963, the Jensen lease was assigned by Panhandle Eastern to Anadarko Production Company with the assignor reserving all right, title, and interest in the lease as to the Hugoton gas-producing formation and all interest in the Fidler 1-29 well. Panhandle Eastern assigned its interest in the leases to Pan Eastern Exploration Company in 1971. In 1975, Anadarko drilled a well on the unit, again not on the tract in dispute. This well is producing from the Morrow formation and is known as Fidler A-1. The parties further stipulated Pan Eastern is the current lease-hold and working interest owner in the Hugoton gas formation with the leasehold and working interest in all other formations being owned by Anadarko.

We turn now to the royalties paid on the wells. As previously stated, the Land Bank commenced receiving one-half of the royalties attributable to the tract from Fidler 1-29 in 1950 based upon a division order. The latter was issued pursuant to a title opinion. In April of 1976, a title opinion on Fidler A-1 was issued to Anadarko stating that the Land Bank no longer owned a mineral interest in the tract based upon our holding in *Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, 498 P.2d 98 (1972). In response thereto, the division order as to Fidler A-1 reflected no interest therein being owned by the Land Bank. The stipulated facts further state that Anadarko suspended all royalty payments as to Fidler 1-29 on May 1, 1976. This aspect of the facts is confusing as the stipulated facts clearly stated previously that Anadarko had no interest in Fidler 1-29 from the Jensen lease, the same having been reserved by Panhandle Eastern. The facts make no reference to any assignment of the Land Bank lease to Anadarko. Nevertheless, the stipulation firmly established that from 1976 forward Anadarko was controlling royalty payments on

both wells. This problem with the facts has no bearing on the outcome of the litigation herein but is mentioned only to avoid giving the impression that the court has stated incomplete or erroneous facts in the opinion.

Anadarko paid all royalties attributable to the tract as to Fidler A-1 to the plaintiffs from the date of first production (1976) until 1984 when a new title opinion was issued which determined that Land Bank's interest in the tract continued under our holding in *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, 617 P.2d 1255 (1980). As a result of the title opinion, Anadarko: (1) paid Land Bank royalties suspended on the disputed one-half interest from May 1, 1976, as to Fidler 1-29 and commenced regular payments on new production; and (2) paid Land Bank one-half of royalties attributable to Fidler A-1 from first production and commenced regular royalty payments to Land Bank on this well.

On January 15, 1985, Anadarko requested recoupment from plaintiffs on the sums paid to Land Bank for royalties from first production on Fidler A-1. In July 1985, plaintiffs advised Anadarko they were contesting Land Bank's right to receive royalties attributable to either well and opposed recoupment. Effective July 1, 1985, payment of all royalties attributable to the contested one-half interest was suspended by Anadarko.

The July 1985 complaint by plaintiffs to Anadarko was the first time any of the parties had challenged Anadarko's or Panhandle Eastern's payment or nonpayment of royalties attributable to the disputed one-half interest herein. The petition herein for judicial resolution of the ownership of the one-half mineral interest at issue was filed on December 9, 1986.

For its principal issue, appellant Land Bank contends the district court erred in refusing to apply *Classen v. Federal Land Bank of Wichita* retroactively to extend its defeasible term mineral interest. In *Classen* defendant Land Bank, by one deed, conveyed three tracts to the plaintiff Classen, reserving a one-fourth defeasible term mineral interest in the real estate. The term was for 20 years and "so long thereafter as oil, gas and/or other minerals, or any of them are produced therefrom or the premises are being developed or operated . . . ." 228 Kan. at 427. One of the three tracts was placed in a unit and a producing gas well

was drilled on other property within the unit. The issue was whether the well held the Land Bank's interest in the tract within the unit and a second tract. The issue as to the third tract had been decided adversely to the Land Bank in *Friesen v. Federal Land Bank of Wichita*, 227 Kan. 522, 608 P.2d 915 (1980). In *Classen*, 228 Kan. 426, we held:

"It is the general rule, absent agreement to the contrary, that a term mineral interest cannot be changed or altered by the terms of an oil and gas lease or a unitization agreement entered into between the term mineral owner and a third party lessee or by the holder of the reversionary interest and a third party lessee." Syl. ¶ 1.

"When a deed, or other instrument, creates a defeasible term mineral interest in two or more tracts of land, production, development or operation (depending upon the particular wording of the habendum clause creating the term interest) on any one tract will extend the primary term as to all other tracts. *Baker v. Hugoton Production Co.*, 182 Kan. 210, 320 P.2d 772 (1958)." Syl. ¶ 2.

"A deed or other instrument conveying oil and gas in place for a fixed term of years and so long thereafter as oil and/or gas is being produced from the property or the property is being developed or operated creates a base or determinable fee. *Wilson v. Holm*, 164 Kan. 229, 188 P.2d 899 (1948)." Syl. ¶ 3.

"The event which perpetuates the term of the mineral interest must be found in the instrument creating it. *Stratmann v. Stratmann*, 204 Kan. 658, 465 P.2d 938 (1970)." Syl. ¶ 4.

"Whenever a defeasible term mineral interest is voluntarily placed in a unit for the production of gas or oil and production is obtained on other land within the unit during the primary term, such production will extend the term mineral interest to the extent of the land and mineral interests included within the producing unit." Syl. ¶ 5.

"Where two or more tracts of land are subject to a defeasible term mineral interest created by a single instrument for a specific primary term and so long thereafter as oil and/or gas is being produced from the property or the property is being developed or operated, and one of such tracts is unitized with other property to form a production unit and production is obtained from such other property during the primary term, such production will extend the term mineral interest as to the tract within the unit but not as to the tract outside the unit." Syl. ¶ 6.

In *Classen*, we discussed *Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, which held that for production to extend a defeasible term mineral interest the well must be physically located on the subject tract. We concluded that *Smith* should be modified to the extent set forth in Syl. ¶¶ 5 and 6 above quoted.

The Land Bank's defeasible term mineral interest falls within the modification of *Smith* as stated in *Classen.* The Land Bank seeks to have *Classen* applied retroactively to extend the term of its interest herein. This we decline to do.

The 20-year term of the reservation expired on July 30, 1960. At that time gas was being produced on the unit with royalties being paid for production attributable to the tract herein. There was nothing in the case law of Kansas holding that this production did not extend the Land Bank's interest. Fifty percent of the royalties continued to be paid as before. When the title opinion on the new well, Fidler A-1, was written in 1976, our holding in *Smith* was pointed out as controlling on the question of the Land Bank's interest in the minerals. Application of *Smith* clearly terminated the Land Bank's interest. *Classen* was filed in 1980, modifying *Smith.* To apply *Classen* retroactively herein would make a phoenix out of a defeasible or mineral interest which had, under the existing Kansas law, expired eight years prior to the filing of *Classen.* Such would not constitute an extension of the term interest but a revival of the same many years after its demise. We conclude this would be inappropriate under the facts herein.

For its next issue, the Land Bank contends that plaintiffs' claim is barred by the statute of limitations.

The Land Bank contends that plaintiffs' claim accrued in 1960 when the reserved term ended and that this action was filed in 1986.

K.S.A. 60-507 provides:

"No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, not provided for in this article, after fifteen (15) years from the time the cause of action accrued."

K.S.A. 60-503 provides:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

This issue lacks merit for several reasons. In 1960, when the 20-year term of reservation ended, there was no existing Kansas case law stating that production from a well in the unit which was not physically situated on the tract in question would not extend the term. The parties hereto and the payer of royalties all operated, obviously, on the assumption that the production extended the term. It was not until 1972 when the *Smith* decision was announced that plaintiffs had a cause of action. This action was filed 14 years after the *Smith* decision.

Further, the Land Bank does not meet the requirements for adverse possession in regard to its interest herein. Its role was wholly passive. The owners of the property had leased their mineral interests and the same are being produced by the lessee. Further, the Land Bank's claim of adverse possession is premised on its interest having terminated in 1960 in order to start the running of the statute of limitations. We have previously rejected this argument.

Additionally, there is the rule that one tenant cannot acquire title by adverse possession against his cotenants.

As we held in *Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, Syl. ¶ 3:

"Where there is a severance of the surface and mineral interests in land the possession of the minerals by one cotenant does not give him title by adverse possession as against his cotenants unless there is an ouster of which the cotenant has notice."

The judgment of the district court is affirmed.

HERD, J., concurring: This is a difficult decision for me because I feel so strongly about the wrongness of our decision in *Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, 498 P.2d 98 (1972).

*Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, 617 P.2d 1255 (1980), by correcting the error of *Smith* eight years later, presented the question of how we handle the production and title events which have occurred in that interim.

*Smith*, in effect, redefined the meaning of "production" by requiring that a well be located on the specific tract under which term mineral interests were reserved in order to perpetuate the term under the habendum clause. Thus, production off the tract

but on a part of a drilling unit with production attributed to the tract could not be used to hold the mineral interests under the "so long thereafter" clause, as if the term had expired from nonproduction. *Smith* terminated all Kansas term mineral interests in their secondary term that did not have a producing well drilled on the specific tract.

So what is the proper way to handle mineral interests which have expired for nonproduction under the rule of *Smith?* Since it is impossible to ascertain what has happened to the myriad of interests which have expired or how many innocent purchasers for value have changed positions because of *Smith,* it appears the most stable way to handle the issue is to treat *Classen* as prospective. To make *Classen* retrospective would constitute an improper taking of property without just compensation just as had occurred with *Smith.* Our dilemma brings to mind an old baseball metaphor where the umpire mistakenly called a strike against a batter. That constituted one mistake. Feeling guilty, and wanting to be fair, the umpire then purposely miscalled the next pitch in the batter's favor, to even the score. The umpire had now made two mistakes. Similarly, *Smith* was our mistake number one, and I do not think we should compound it by making *Classen* retrospective.

I concur.